```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
JABARI BAKER,

                   Plaintiff,
                                          MEMORANDUM AND ORDER

                                          18 Civ. 5003 (NRB)
         - against -


NYPD OFFICER PEDRO JIMINIAN, NYPD
OFFICER TENZIN GYALTSEN, and NYPD
SERGEANT HUI CHI,

                   Defendants.
----------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

NYPD Officers Pedro Jiminian and Tenzin Gyaltsen and Sergeant Hui Chi (collectively, "defendants") move for summary judgment on Jabari Baker's claim under 42 U.S.C. § 1983 that defendants used, or failed to intercede in the use of, excessive force during his arrest. Defendants' motion is granted in part and denied in part for the reasons stated herein.

## BACKGROUND

This case arises from an arrest that occurred on the morning of March 2, 2016 on the uptown platform of the New York City Subway station located at the intersection of West 135th Street and Lenox Avenue in Harlem. The entrance to that platform consists of three adjoining turnstiles, on both sides of which is an emergency exit door, each of which is flanked by a revolving exit wheel. See

Declaration of Julia P. Kuan ("Kuan Decl."), Ex. 10.  The entrance runs from north to south, such that one revolving exit wheel is at the north of the entrance while the other is at the south, and the subway platform is on the west side of the entrance.  See Kuan Decl., Ex. 10.

Baker testified that on the morning of March 2, 2016, he entered the platform by swiping his MetroCard at one of the turnstiles.  Baker Dep. 47:11-17, Sept. 17, 2019.  He testified that a few minutes after he entered the platform, a woman with a stroller knocked on the emergency exit gate nearest him, which he opened to allow her onto the platform.  Baker Dep. 47:15-22.  Baker testified that around one minute later, while he was standing "near the yellow line" on the edge of the subway platform, he "felt someone tightly gripping [his] arm from behind" with "both . . . hands."  Baker Dep. 53:23-24, 54:1-5, 87:15-24; Zuckerman Decl., Ex. F.  Baker testified that "as he tr[ied] . . . to turn around to see who's grabbing [him]," he "was slammed face first to the ground."  Baker Dep. 54:1-7.  Baker suffered two fractured teeth and abrasions to his hip and hand.  See Kuan Decl., Ex. 8 at 4.

Baker testified that only one person grabbed him and threw him to the ground and that the person who did so was a police officer, but that he could not identify the officer by name.  Baker

Dep. 55:14-24. Baker described the officer as "[t]all, heavy build, muscular build, Caucasian complexion, like straight hair. Not really too much." Baker Dep. 55:25-56:2. Baker also testified that the officer was "[a]bout 6'4", 6'3", a little taller than me." Baker Dep. 56:4:5. Baker is 6'2". Baker Dep. 56:6-7.

Baker testified that a second officer arrived "a minute after, shortly after" the first officer had thrown him to the ground. Baker Dep. 58:23-25. He described the second police officer as "about 5'4", I think he was like Asian, 140 pounds, 120 maybe, he was slim build, he was slim." Baker Dep. 59:1-3. Baker testified that a third police officer arrived "about six minutes, five minutes" after the second officer, and that the third officer "was an Asian guy." Baker Dep. 59:14-19. Baker was also unable to name the second and third officers. Baker Dep. 59:4-8, 59:17-21. Baker testified that the officers detained him for around ten minutes and then transported him to a police station. Baker Dep. 60:4-9.

It is undisputed that on the morning of Baker's arrest, defendants were patrolling in plain clothes the subway platform on which Baker testified that he was thrown to the ground. See Defs.' 56.1 ¶ 3; Jiminian Dep. 60:18-21, Sept. 17, 2019. Jiminian testified that from a position on the platform several yards north

of the entrance, see Jiminian Dep. 134:17-135:12, he observed Baker, and only Baker, enter the platform through the northernmost emergency exit gate, Jiminian Dep. 84:13-15, 84:21-23.  Jiminian testified that after Baker entered the platform, Baker stood just north of the turnstiles near the emergency exit gate. See Jiminian Dep. 135:17-137:6; Zuckerman Decl., Ex. G.  Jiminian testified that he approached Baker, displayed his shield, and said "NYPD," Jiminian Dep. 89:3-21, in response to which Baker "turned around," "ran through the turnstile," "tripped," and "fell on his face." Jiminian Dep. 90:19-21, 92:14-15, 94:2-3, 98:18-23.  Jiminian testified that Gyaltsen and Chi then arrived, and that all three officers handcuffed Baker.  Jiminian Dep. 102:10-21.

Chi testified that he was standing approximately 30 feet south of the turnstiles when he saw Baker enter the platform through an emergency exit gate without paying a transit fare, observed Jiminian show his badge to Baker, and watched Baker try to escape through the turnstiles.  Chi Dep. 72:11-18, 90:20-24, 94:5-10, 137:5-16, Sept. 19, 2019.  Gyaltsen, meanwhile, testified that although he could not "recall [his] exact location," including whether he was "inside of the turnstile[s] or right outside the turnstile[s]," he was "[v]ery close" to, but "not within arm's distance" of, the turnstiles such that he "could observe the

turnstile[s] and emergency exit gate." Gyaltsen Dep. 59:4-7, 59:13-22, 59:23-60:7, Sept. 19, 2019. Gyaltsen testified that he saw Baker "enter[] through the emergency exit gate," "run through the turnstile," and then "fall down on the ground." Gyaltsen Dep. 74:17-21, 96:17-22.

After defendants arrested Baker, they transported him to a police station where he was charged with theft of services and criminal trespass. See Defs.' 56.1 ¶ 10; Kuan Decl., Ex. 6. Baker was released from custody that day with a Desk Appearance Ticket that listed Jiminian as the arresting officer. See Kuan Decl., Ex. 6. Baker testified that he no longer possesses the MetroCard that he claims he swiped at the turnstile. Baker Dep. 62:9-10.

Jiminian is about 5'9" and weighed approximately 240 pounds on the morning of Baker's arrest. Jiminian Dep. 56:4-22. On that morning, Jiminian had a "shaven head" and "a somewhat muscular build." Declaration of Pedro Jiminian ("Jiminian Decl.") ¶¶ 3-4. Jiminian is Hispanic. Jiminian Decl. ¶ 2. Gyaltsen is 5'5" or 5'6" and weighed approximately 160 pounds on the morning of Baker's arrest. Gyaltsen Dep. 62:6-9. Chi is 5'7" and weighed around 140 pounds. Chi Dep. 63:16-25. Gyaltsen and Chi are Asian. Pl.'s 56.1 ¶ 12.

On June 5, 2018, two years and three months after defendants arrested him, Baker filed a complaint against Jiminian and "NYPD Officer 'John Doe,'" alleging that both Jiminian and Doe grabbed Baker and threw him to the ground face first. Compl. ¶ 10. After Baker's attorney sent counsel for defendants an email asking for "the identity of the second officer," counsel for defendants responded that "P.O. Tenzin Gyaltsen and Sgt. Hui Chi were with P.O. Jiminian." See Kuan Decl., Ex. 5. Baker thereafter amended his complaint to remove Doe and add Gyaltsen and Chi as defendants, and to allege that Jiminian, Gyaltsen, and Chi all grabbed him and threw him to the ground. Am. Compl. ¶ 10. Baker later testified that only one police officer threw him to the ground, and has since maintained that Jiminian was that officer. E.g., Pl.'s Opp. at 5.

Baker brings two claims under 42 U.S.C. § 1983 against defendants. First, he contends that defendants used, or failed to intercede in the use of, excessive force during his arrest. Am. Compl. ¶¶ 18-20. Specifically, Baker maintains that Jiminian directly used excessive force against him by grabbing him and throwing him to the ground, and that Gyaltsen and Chi failed to intercede in Jiminian's direct use of excessive force. See Pl.'s Opp. at 5, 9. Second, Baker contends that defendants falsely

arrested him.  Am. Compl. ¶¶ 20-22.  Defendants moved for summary judgment only on Baker's excessive force claim.

## STANDARD OF REVIEW

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 74 (2d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quotation marks omitted).  Although the movant generally bears the burden of demonstrating the absence of a genuine dispute of material fact, where, as here, the burden of proof at trial would fall on the nonmoving party, it suffices for the movant to identify the absence of evidence on an essential element of the nonmoving party's claim, in which case the nonmoving party must proffer admissible evidence sufficient to create a genuine issue of material fact.  CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013).  In determining whether there is a genuine factual dispute, a court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 255 (1986).  The nonmoving party's "version of any disputed issue of fact thus is presumed correct."  Eastman Kodak c. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992).

**DISCUSSION**

Defendants do not move for summary judgment on the ground that no reasonable juror could find that a police officer grabbed Baker and threw him to the ground while Baker was waiting for the subway.  They instead move for summary judgment based on Baker's failure to establish the personal involvement of each named defendant in that alleged use of force.  "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation."  Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).  "A police officer is personally involved in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of the victim even though he had a reasonable opportunity to do so."  Vesterhalt v. City of New York, 667 F.Supp. 2d 292, 297 (S.D.N.Y. 2009) (citing Ricciuti v. New York City Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997)).

-8-

There are two aspects of defendants' motion. First, defendants argue that Baker has failed to adduce evidence sufficient to identify Jiminian as the police offer who grabbed him and threw him to the ground. Second, defendants contend that there is no genuine dispute that Gyaltsen and Chi had no reasonable opportunity to intercede in Jiminian's alleged use of force against Baker. The Court addresses each contention in turn.

**1. Direct Participation in the Alleged Assault**

Defendants' argument with respect to the identification of Jiminian must be considered in the context of defendants' admission that on the morning of March 2, 2016, they were patrolling the uptown platform on which Baker was arrested, and that they were the three police officers who arrested him. Baker testified that the officer who threw him to the ground had a Caucasian complexion and a "heavy build," and that the other two officers were Asian. Gyaltsen and Chi, who weighed approximately 160 and 140 pounds, respectively, on the morning of Baker's arrest, are Asian whereas Jiminian, who weighed approximately 240 pounds on the morning of March 2, 2016, is not. Moreover, the Desk Appearance Ticket with which Baker was discharged from the police station listed Jiminian as the police officer who arrested him.

Although Baker's description of the police officer who allegedly assaulted him reasonably describes only Jiminian, and does not plausibly describe Chi or Gyaltsen, defendants nonetheless note that Baker's description is, in certain respects, inconsistent with Jiminian's appearance. For example, they highlight that Baker, who is 6'2", described the officer as "[a]bout 6'4", 6'3", a little taller than me," but that Jiminian is only 5'9".

While Baker's description of the officer who allegedly assaulted him is inconsistent with certain aspects of Jiminian's appearance, those discrepancies, some of which are more significant than others, would not preclude a reasonable juror from identifying Jiminian as the officer who allegedly assaulted him for the reasons just stated.

The jury could, however, consider those inconsistencies in evaluating Baker's credibility. Likewise, the jury could consider Baker's shifting recitals of the entire incident. In that regard, it is worth noting that Baker's initial complaint, which he filed more than two years after the alleged assault, named only Jiminian and one unidentified police officer as defendants, and alleged that Jiminian and that unidentified officer both grabbed and grounded him. After Baker's attorney requested the identity of

the unidentified police officer and counsel for defendants responded that Gyaltsen and Chi were the officers who were with Jiminian, Baker amended his complaint to remove the unidentified officer, add Gyaltsen and Chi as defendants, and allege that all three defendants grabbed and grounded him.  Baker then changed his story yet again when he testified that only one police officer assaulted him.  The jury may also question why Baker did not retain the MetroCard with which he claims to have swiped to enter the platform, and which the New York City Transit Authority could test to determine the locations and times at which it was used. Zuckerman Decl., Ex. I (Depo. of William Henehan) at 14:19-15:21.

In any event, the Court readily acknowledges that "[c]redibility assessments . . . are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55-56 (2d Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  Accordingly, defendants' motion for summary judgment on Baker's claim against Jiminian for the direct use of excessive force is denied.[1]

---

[1] To eliminate any ambiguity, the Court grants defendants summary judgment on Baker's claim of excessive force to the extent it is based on Chi's and Gyaltsen's direct participation in the alleged assault because Baker does not contend that either of those officers grabbed him and threw him to the ground.

### 2. Failure to Intercede in the Alleged Assault

"'It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.'" Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). "An officer who fails to intercede in the use of excessive force or another constitutional violation is liable for the preventable harm caused by the actions of other officers." Id. However, "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Anderson, 17 F.3d at 557. "Whether the officer had a 'realistic opportunity'" to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" Terebesi, 764 F.3d at 244 (quoting Anderson, 17 F.3d at 557).

Defendants contend that there is no genuine dispute that Gyaltsen and Chi had no reasonable opportunity to intercede in Jiminian's alleged use of force against Baker. The Court agrees.

Baker testified that he tried to turn around after he felt someone grab his arm, but that while he was trying to do so, the person "slammed" him onto the ground face first, breaking his teeth

"instantly." Baker Dep. 48:2-6, 54:5-7. Considering the absence of any evidence of intermediate conduct, such as Baker struggling or conversing with his alleged assailant after being grabbed but before being thrown to the ground, the alleged assault could not have lasted more than a few seconds.

Given such an ephemeral duration, no reasonable juror could conclude that Chi had a reasonable opportunity to intercede in light of his uncontroverted testimony that he was standing 30 feet south of the turnstiles when Jiminian confronted Baker in front or just north of them.

Nor could a reasonable juror find that Gyaltsen had a reasonable opportunity to intercede in Jiminian's alleged use of force. Baker's uncontroverted testimony is that he was standing near the edge of the subway platform when Jiminian allegedly assaulted him, and that the second and third police officers arrived approximately one minute and five minutes later, respectively. Moreover, Gyaltsen's uncontroverted testimony is that he was standing "[v]ery close" to, but not within arm's reach of, the turnstiles when he observed Jiminian confront Baker. Gyaltsen Dep. 59:23-60:7. Given the delay in Gyaltsen's arrival, that he was standing near the turnstiles when Jiminian confronted Baker near the edge of the platform, and that the alleged assault

occurred in mere seconds, no reasonable juror could conclude that Gyaltsen had a reasonable opportunity to intercede in Jiminian's alleged grounding of Baker.

Defendants' motion for summary judgment is accordingly granted as to Baker's claim that Chi and Gyaltsen failed to intercede in Jiminian's alleged use of excessive force.[2]

### CONCLUSION

Defendants' motion for partial summary judgment is granted in part and denied in part for the reasons stated herein. The only claims remaining for trial are (1) Baker's claim against Jiminian for the direct use of excessive force; and (2) Baker's claim against all defendants for false arrest. The Clerk of Court is respectfully directed to terminate all motions pending in this case.

**SO ORDERED.**

Dated: New York, New York
June 15, 2020

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[2] To eliminate any ambiguity, the Court grants defendants summary judgment on Baker's claim that Jiminian failed to intercede in the use of excessive force because "a defendant cannot be liable for both the underlying constitutional deprivation and a failure to intervene to stop himself from committing that violation." Case v. City of New York, 233 F.Supp. 3d 372, 402 (S.D.N.Y. 2017) (quotation marks and alterations omitted).